McNamara v. Fidelis Legal Support, et al. Cases 251377, 251379, and 251418. Good morning. Good morning, Your Honor, and may it please the Court. Alex Loomis for Appellants Bushlake to swear of Viteris, BDC, and Fidelis. With the Court's permission, I'd like to reserve two minutes for rebuttal. Yes. This appeal asks whether a magistrate judge without consent from all parties can authorize a receiver to seize the assets and control of entities unconnected to the underlying litigation without any possibility of Article III review. The orders below designated appellants as receivership defendants, placed them under receivership control, took control of their businesses, imposed an asset freeze injunction upon them, and enjoined them from carrying on any business, despite their never consenting to magistrate judgment. So you say that it imposed an asset freeze injunction against them. Where exactly are you looking in those orders? So it's the asset freeze injunction section of the orders. And the asset freeze injunction is directed to the asset freeze defendants. Asset freeze defendants is defined to include any successor of lit def in the original defendants in the case. Right. So it's It's defined to include that. So the orders below purport to be applying the original order against these defendants, right? That's correct. That's what it says. So you're saying that we should understand it as in substance imposing a new receivership or modifying an injunction as opposed to applying a preexisting one? That's right. And that's because under Weight Watcher. Why should we do this? Weight Watcher says that the relevant test for whether or not you're interpreting a prior injunction or modifying it is whether it substantially alters the relationship between the original parties. Doesn't it also have to be very clear? Excuse me? Doesn't it have to be clear? Clear on the face of the order that it's doing that? I think it is clear on the face of the orders below that this is applying this injunction to us. I'm sorry. I'm impressed I'm missing the question. You got my question. You think it's clear. Where exactly does it say that your clients are subject to an asset freeze? So to be clear, we think we are under the Court's findings that we are the successors of these entities. If this Court disagrees with that and says that we are not subject to the asset freeze, that is good news for us, but we are acting on it. I guess there's a middle point. If we think that it's unclear, then what do we do? Then there's still a jurisdiction under 1292a2 and without getting to the 1292a1 inquiry. And you could have jurisdiction under 1292a2. Why does the asset freeze question matter? Isn't an asset freeze just a normal part of appointing a receiver? I think that it's a temporary asset freeze before the receiver takes over as a normal part of the receivership. But it's not. This one goes beyond that by imposing a global one that will take place even afterwards. After what? After the appointment? After the receiver takes ownership and control of the property. But in this instance, we still have to... But after they take control of the property, the assets are frozen insofar as you can't act independently of the receiver, right? But the receiver takes control. This injunction seems to go further than that. But regardless, if this Court believes that the injunction does not, that the injunction... Let me just go back so that we finish up on it. Of course. You say it seems to go further than that. And everything that you're saying suggests to me that we can divine from reading these orders that they have imposed an asset freeze on your clients. Is there a specific place in these orders that says the asset freeze is extended to your clients? None of them mark orders below. So we've operated under that assumption, and the receiver has not contradicted it because we fear contempt sanctions if we were to act in any other way, especially given that there have already been referrals for contempt for other parties in the case. That is why we took those precautionary steps. We've been acting under that assumption, and the receiver hasn't contested that on appeal. But to be clear, we still win under 1292A2, even if this Court relieves us of this interpretation of the injunction, which, again, we have adopted as a precautionary measure. We win under 1292A2 because whenever a receivership is appointed over a new entity that was not subject to the original receivership, that is a receivership appointment. You keep saying a new entity that wasn't subject to the original one. Like, so, but the original receivership did apply not only to the corporate defendants, but also their subsidiaries, affiliates, divisions, successors, and assigns, and other businesses that are related to this scheme. So let's say that the way it was defined, you dispute that you meet that definition, but let's say the way it was defined, we're adding an entity that indisputably meets that definition. It just says it applies to the corporate defendants and anybody in whom, you know, some person is involved, and there's some other entity that's later discovered, and it's undisputed that that person is involved in that entity. Would you still say that a new receiver is being appointed? Yes, I would, and two sources for that. So Clark and Receivers, as well as this Court's Wheaton case, says that whenever first that all receivership orders have to identify the parties that are placed under receivership with extreme particularity, it can't leave an open-ended definition to fill in later on. In the same way that a court cannot enjoin the world of receivership cannot purport to place the world under receivership. So, I mean, so wouldn't that be an argument for why this receivership shouldn't have been upheld in the first place? So that... If the original receivership was, the original receiver was appointed over not only the corporate defendants, but also their affiliates and everything else, you're saying that that was invalid because it had to specify the specific entities in advance? Probably, but the original parties didn't make that argument or have an interest in making that argument because it didn't pertain to their interest. Is that really true? I mean, isn't the nature of a receiver often that the receiver has to seek out other assets and entities that might not be immediately apparent when you first impose their remedy? Yes, he does, and he has to do so by bringing a new action or bringing a new injunction against them. And that's the Wheaton case. That's the Greenbaum case. And Greenbaum, this Court held, that simply appointing a receiver over a company does not give the receiver control over all of its subsidiaries, even unless there is an actual feeling of piercing the corporate veil. Well, here, though, the original order does that. So, but to be clear, we had no ability to challenge the original order. Well, I understand that, but there are situations where a receiver, when appointed, it's clear that it extends to subsidiaries and so on, as in this case. You don't disagree with that. So, yes, if it names the subsidiary, if it names the specific entities, so if, for example, if a receivership were appointed over Company A and its subsidiary B, C, and D, then, yes, that would be a legitimate receivership or appointment order. But then it wouldn't matter that this is a subsidiary because you'd just be specifying the entities, right? Well, yes, it would be specifying the entities, but it's... So you're saying in a case where there's a receivership over an entity and there's a belief that there's a lot of, you know, shell companies and other kinds of entities out there that haven't been identified yet, the order appointing the receiver has to specify the ones that are known, and as they're discovered, basically reinstate a new receivership over each one of them. Yes, that's right. And it shouldn't be hard, given law of the case considerations about the need to preserve assets, the relevant standards are there. But the key thing for this Court's purposes is that this Court would have jurisdiction over the appeals because otherwise these entities will have no opportunity to ever challenge the receivership imposed before them. We haven't received review from an Article III judge yet before this appeal. This is the first time we've done so. And that was a key consideration in the Mitchell case out of the Ninth Circuit in 1930, which emphasized that even a party that was – filed a motion to vacate a receivership, which is not an appealable order under 1292A2, had the right to seek an interlocutory appeal, notwithstanding the fact – simply because it was the first available opportunity that party had to challenge it. Okay, so just to back up a minute. So you're saying an order appointing a receiver can be imprecise maybe about all the assets. It might say all the assets owned by this company, and then the receiver can seek out the assets wherever they're located and add them to the receivership, right? Yes, that's true. But if it's appointing a receivership over unknown entities, it can't do that, and the receiver can't look for other financial entities. Why? Because the entities are a legal person, and it's like a due process limit on the way you can impose a receivership? Well, so to be clear, I'm not saying that it can't – It can. It can. It can do that. It's – you have to apply for a new receivership in order to get it. That's what I was going to say, Judge Loewi. So to that – to that point – No, no, but that's what I'm saying. You're saying, like, it's possible for an initial appointment of a receiver to not specify all of the assets, to just sort of say – Yes. There's a receivership over this corporate entity and these defendants and all assets that they own as the receiver, like, does an investigation and discovers them. Yes. But if we think that actually the defendants have a network of financial corporations and other entities, you cannot say the receivership applies to all of those and they're added as they're known. You have to have new orders in each case as you discover them. So to be clear, it is actually the same inquiry for both the assets and the new entities rule, and I want to be really clear about this. That's – that's what the Whedon case was about, where you had a third party who was – had assets that the receiver said belonged to the receivership, but that third party claimed title to the assets. This is also what Clark on receivers says, that whenever you have people with competing claims over the property interest, if the receiver – Well, there – and also the issue is that there's another person that claims ownership of those assets and you're kind of interfering with that person's rights. Well, and our rights are being interfered with, too. Our businesses have been taken over in this instance, even without getting to this point. No, I know. I'm just sort of saying, like, it doesn't – I'm actually – I sort of think that this is probably helpful to you. Yeah. Because one concern about your position would be that you'd have an appeal over every little modification of a receivership, and you're not saying that. You're saying just if you extend it over another legal person, then you need to say that it's a new receivership. Yeah, that's – that's exactly right. Look, we're not saying we want – oh, I'm sorry. Go ahead. Answer that question, but now – now I'm confused, but go ahead. Well, I think that was a friendly one, but also I'll say, yes, I agree – I agree with that. We get one appeal from the original time when we're brought into the case and subject to the receivership. But you're also adding assets. In other words, if a receiver, for example, decides to go after certain assets in a joint venture, then the other party to the joint venture who's not a party to the original receivership has some claim that a new receivership has got to be needed? No. So the way that works normally if it's just an asset is that the receiver will bring an action against it or file a motion for turnover in the court. Yes. Now, if the court gets to final judgment and says, yes, the receiver definitely has control over this, final judgment, I don't need to decide anything further, then it's simple, 1291 appeal. If the court says, I'm not sure, but I think the receiver has done a good enough showing for me to at least freeze the assets in furtherance of the receivership, then 1292A1 injunction, preliminary injunction subject to collateral order appeal. So that's our point. Because that's a – that's a new receivership? Or what is that? So if there were – I guess it would – 1292A2. A2. Sarah, yes. I probably shouldn't try to cite statutes off the top of my head. So the preliminary injunction interlocutory appeal. That would be the way for the receiver to temporarily freeze assets or say, please turn over these assets for in – for – to the court registry or to my receivership subject to final determination. But the point is that I'm not saying that the moment the receiver brings a new action, we get a collateral order appeal from a motion to dismiss or anything. That's not what I'm saying. I'm saying that if in a new action that he brings to try to seize assets that belong to a new joint venture, if the receiver were to get some temporary relief in the form of a receivership or a preliminary injunction, then yes, absolutely. I get the logic of that. How do we get that from the text? So if we have jurisdiction of an appeal from interlocutory orders appointing receivers. Yes. Or refusing orders to wind up receiverships or to take steps to accomplish the purposes thereof. You know, the receiver was already appointed. So what the receiver thinks he's doing is just enforcing the original order of receivership, right? So I think we shouldn't understand it that way. We should understand it as basically the appointment, the new appointment of a receiver. Yeah. And the way I think we cut – we think about this is that when Congress enacted 1292A2, which is the receivership interlocutory appeal provision in 1925, there was no ability for a receiver to simply interpret prior orders to expand to cover new entities. And that's why we cite the Clark treatise from the 1920s to ascertain the original meaning there. The only way that a receiver could take control over a new entity was a receivership appointment order. So if we're trying to construe what the meaning of receivership appointment order is, using that term as it's understood in traditional equity when the statute was enacted, it covers all scenarios in which the receiver takes control. Well, I don't know. I mean, I don't know which way that cuts. What you're just saying is that when Congress enacted it, they wouldn't have imagined a circumstance in which a receiver enforcing a preexisting receivership would extend it over some other entity. But now they can. And so it seems like you just kind of acknowledge that the statute doesn't cover that circumstance. No. Two responses to that, Your Honor. So first off, I'm making a different argument. I'm saying that receivership appointment order is understood, and the original meaning of that is defined to include any appointment of a receiver over any entity that was not previously subject to one. That's one argument. But, two, even if you don't accept that point, Rule 66 of the Rules of Civil Procedure specifies that the administration of an equity receivership has to be done in accordance with the historical practice of equity. So it's not the case that receivers have the ability to innovate upon traditional forms of equity.  So that goes back to your argument that actually you think that the original order of receivership was invalid to the extent that it said that it applies to unidentified successors and affiliates and other entities. Again, I do think that, but it strengthens our argument. It doesn't weaken it. My only point is that a receiver cannot...  Why does it... What do you mean it strengthens your argument? Do you not need that argument? So if we were to say or take for granted that the initial order is valid, that actually there was a valid appointment of a receiver over not only the named corporate defendants but also all affiliates and successors who meet the criteria, and they did not need to be named in advance, then we would understand what's happening here as enforcing a preexisting receivership. No, you wouldn't, because this Court has said that the difference between interpreting a prior, at least an injunction, and I would submit the same analysis applies to a receivership order, is when you are trying to ascertain the Court's original meaning and original understanding when it issued the original order. So this is not an injunction. This is a receivership. I think that if we are... And you're trying to create a bridge from what we said in the context of a PI, an injunction, to the receivership context. Is that fair? No, I don't think I am. Well, have we said anything along the lines of what you just said for receiverships and 1292A2? No, but courts have said that a receivership appointment order has to... Courts have said. This Court has said, I believe, in Greenbaum, that the original receivership order defines the scope of the original receivership. So maybe... That's certainly in Clarkham Receivers. Maybe there's a question about precedent, but I don't find it problematic to say that we should understand the receivership order the way it was understood by the Court that issued it, but isn't it pretty obvious that the way it was understood when the order was issued was that this is going to apply to an imperfect defendants and anybody else that the receiver identifies who meets the criteria of being an affiliate that was involved in the scheme. But my only point was that the magistrate judge did not understand the original receivership order to apply to us because he didn't even know about us when the TRO initially issued, and when... And he didn't know about the... But he did, right, because he understood the order to apply to as-yet unidentified entities that meet these criteria. So, okay. So if that's the definition that this Court is putting forward, then, yes, we would say that the original order was invalid in that respect. The original defendants didn't have the incentive to challenge it on precisely those grounds. They certainly had less incentive than we do. And the principle underlying the Mitchell case, which... But why did they have less incentive? I mean, it is successors and affiliates of those defendants. Like, wouldn't they be worried about the kind of freewheeling receivership that would dig into all of their financial dealings and identify other financial interests and extend the receivership over them? Why wouldn't they have an incentive to object to the scheme? I think they would... I mean, well, you know, you only get 14,000 words on appeal. I think they had a lot of issues to appeal in the first time, and they wanted to focus on the challenging the appointment of the receivership and the injunction as a whole. And by contrast, there was an expectation based on the Mitchell case, which is cited in Wright and Miller, and cited approvingly by Judge Posner in Hardigan v. Peters, that any time a new party is subjected to a receivership, it has the ability to file an interlocutory appeal. Okay, can I ask this question? You said a moment ago about entities that are alter egos. So if the magistrate had determined that actually these entities are alter egos of the defendants that were named in the receivership order, it would be okay to apply the order to them, right? I think we'd have an appeal about that because... But if they were alter egos, then they would be essentially named in the original order, right? Yeah, I think that would be the argument. Didn't the magistrate here essentially say that? He said the Strat FS is operating in the guise of Fidelis and even is putting contempt sanctions on the named defendants for operating these other entities because they're continuing their own operations through these entities. So the magistrate judge thinks that they are the alter egos, right? So I'm going to unpack that in a few different places. So first off, the magistrate judge recommended contempt sanctions against Lit Def and Mr. Bluss for operating Lit Def during the transition period. But part of that is operating in the guise of Fidelis. No, I don't think that's right. Okay, well, fine. But he does think Lit Def is operating in the guise of Fidelis. He said that based on findings of what happened in 2021 and 2022, and there is no citation of any legal standard for alter ego analysis. There's no finding. There's no finding. Yeah, that's right. Okay, but I guess my thought is, you know, we are allowed to affirm based on anything in the record, right? So, like, why is it that the record precludes a conclusion that these entities are the alter egos of the corporate defense? Well, normally when we affirm based on arguments that are not in the record, it's an argument that the appellee has posited so that we could at least respond in reply or at some point, at some point in the lower court proceeding. You're saying it's unfair because you haven't had the chance to. Well, I certainly would be able to develop a fuller record in briefing on this issue, but, yes, it's also not right because most of the record evidence that's cited by the magistrate judge is, again, evidence from 2021 to 2022. And these facts are not in our brief because it wasn't put up for this issue, but it was submitted below that there's actually a lot of countervailing evidence to show that, in fact, they are separate entities and that they do dispute that they share the same employment structures, the same leadership structures, the same vendors, the same clients, and so forth. Well, the magistrate judge rejected that. Like, that was contested whether, you know, there was control by the corporate defense. And we disagree with that, and we didn't put that before this Court. I would have done so, of course, if the receiver had sought for affirmance on alternative grounds on that issue, but we didn't. Can I go back to 1291a1? Yes. 1291a1. If we were to disagree with you that the order is clear that it imposes an asset freeze on your clients, would it be appropriate to remand back to the magistrate judge to ask for clarification? Just assume that we disagree with you and think that it's sufficiently unclear on this record that these orders impose or were intended to impose an asset freeze, which is the core of your argument, as you pointed out at the beginning. Would it be appropriate for us to remand back to ask for clarification? Is this a Jacobson remand? I'm just clarifying. Just a regular remand. I don't know that I want this back. So it's just a remand. So we certainly would object to that because, one, there's jurisdiction under 1292a2 to start. Two, if this Court — So assume we also disagree with you on 1292a2. So I think that the injunctive provisions of the appointment order, it's called a preliminary injunction. It's not called a receivership order. It uses the term injunction several times. And I take the point, of course, that in Complete Business Solutions, they drew this hard and fast distinction between injunctions and receiverships. But they drew that line from the Highland Avenue case from the Supreme Court, which adhered to the strict distinction between injunctions and receiverships at a time when there were no interlocutory appeals from receivership orders. So I think we still win even without getting — even if there were some doubt about that, because there definitely are injunctive provisions that use the word enjoin that apply to us that are outside of the asset freeze context. And, sir, the reason why you think it applies to you is because since you have been named a receivership defendant and some provisions that you consider injunctive of the P.I. apply to receivership defendants, that's how it applies. That's another reason. So the original reason about I walk through the steps for the asset freeze defendants, but that's the other reason, yes. Thank you very much. Mr. D'Antonio, you have reserved two minutes for rebuttal. May it please the Court, Thomas D'Antonio for the receiver, Thomas McNamara. I'll start with several of the questions that Judge Menasche asked. I don't think there's anything in this record that suggests that this is a new receivership. In fact, there's only one order that appointed the receiver, and that was the order that was issued on March 4th of 2024, an order which this Court recently affirmed. That's right. So clearly what the magistrate judge thinks is going on here is that there's a preexisting order imposing a receivership that applies not only to the corporate defendants, but also to successors and affiliates. And he thinks he's identifying the entities that are subject to the original receivership. But we just heard from opposing counsel that you can't have an order of receivership that doesn't identify the entities to which it's subject. And so, therefore, whenever you include a new entity, you are appointing a new receivership. What do you think about that? Well, I think if that were the case, this Court would see a lot more appeals every time that there is a party that winds up getting added. And I'll point out that the original receivership — We would be flooded with appeals. We would be. Yeah, you would be, absolutely. It would be seriatim, one entity after another after another, depending on when the receiver finds that entity and includes that entity or freezes the assets. Is that the point? That's right, Judge Loeb. And in addition, take a look at the record in this case. This is not a situation where the magistrate judge, you know, just decided one day to identify these particular five appellants as receivership defendants. There was a process that was set forth in the order. And the order was purposefully drafted, as far as I understand, in order to allow the receiver to identify entities that were not yet known to it. And if you look at the — It was done that way. So before we talk about what actually happened, do you agree with the opposing counsel's argument that actually you can't do it that way? You have to identify all the entities. No, I disagree. And why? And what's the reason for that or the authority for that? Well, first of all, I would say this court affirmed the receivership order that was at issue with this very language. And so if there was an infirmity in that order, I presume this court would have modified the order. Secondly, I think if you take a look at the hearing transcript, which we wound up having to put into the record here, what we identify is a situation where the principals, Jason Blust and others, but primarily Blust, submitted a series of declarations that turned out to be false, that basically said, I have nothing to do with Fidelis. And Fidelis has nothing to do with the other four appellants. But now you're sort of arguing the merits and the equities. These really were successors and affiliates. So let's just imagine a hypothetical where actually there is a receiver who's acting very irresponsibly or is power hungry or something and just goes off and extends the receivership to a bunch of entities that really are not part of the scheme. And like anybody who looked at it would say, this receiver is out of control and is acting lawlessly. You still would say that the new entities would not be able to appeal because all he would be doing was applying the preexisting receivership, right? Well, this order in Judge Menasche actually provides for a mechanism to review a receiver who goes off the reservation. It permits the designated new receivership defendants to bring a motion before the court and basically force the receiver, put the receiver to his or her proof. Well, that's what happened, right? Yes, exactly. But the new entities think that, I mean, if you have a receiver that's out of control, as in my hypothetical, he's probably going to deny that motion, right? Well, the receiver doesn't decide it. Whether the new entities can appeal. But the receiver doesn't decide that. It gets oversight by the magistrate. It goes back to the district court or the magistrate dependent, yes. So then you're saying that actually there is recourse to the magistrate. Absolutely. Absolutely. And this record acts. There's a process.  Now, does that make a difference to the jurisdictional provisions? Like does the whether we have jurisdiction over this turn on whether this particular receivership allows that kind of a mechanism? I don't think it does because I don't think that the order in all events or the orders that are appealed from in all events constitute either an injunction or an appointment of a new receiver. And those are the limits that the court has established, you know, and repeated are clearly established by statute. So I'm sorry. Did I answer your question, Judge? You were going to point to part of the order that provides for some process pursuant to which the receiver could identify but also give new entities an opportunity to contest. Where is that? Do I have that? Did I describe that correctly? Yes, you did. It's in the original receivership order. I don't have the statute. It's in the original receivership. Yes, the March 4th, 2024 order. And the supplemental appendix that we submitted has the hearing transcript. And I think as well, particularly in the May 22nd order, which is the second order that was appealed from. That's what I was looking, but okay. Yeah. The order itself is, I think it's the first 50 some odd pages of the special appendix. I get the argument about the statutory text. Just as a matter of how it would work, isn't it odd that whatever entities are initially named in the order appointing a receiver get to have an introductory appeal, but every additional entity that's brought in, even though it's now subject to the same provisions and the same order, does not get to have an introductory appeal? Well, Judge, I would say this. The particular appellants here, and I recognize that's not an entire answer to your question, but with respect to the appellants who are before this Court, the magistrate made a determination that those appellants were in the same business as the original defendants and were under control. As we were saying before, there's no, I mean, maybe you dispute this, but there's no finding that they are the alter egos of those entities. The Court didn't use that. They're separate corporate defendants. They're entitled to a presumption of separateness. They are separate legal persons. So you can't just say that they are the same parties. So these are new parties being brought into the receivership that were not previously, or were not previously aware that they were in the receivership. And the people who were, or the entities that were initially named, they get to have an appeal. But anyone added does not get to have an appeal. And it just seems the same thing is happening to all of them. So why should there be that differential treatment? I think, again, although the Court, I grant you, did not use the term alter ego, I respectfully suggest that if you look at the actual hearing transcript, it shreds the argument that these parties were simply, you know, didn't have either their day in court or are truly separate. I don't know that that answers the question. They're separate parties. Do you agree with that? I mean, they're, well, so what you're suggesting is that they are not separate parties. Correct. So there's a finding to which we should defer in some way for some reason. And if we defer to that finding, then this whole argument of separateness of the entities goes away as a basis for jurisdiction. Yes. And, Judge, with respect to Mr. Loomis, he says that the asset transfers that were focused upon all happened in 2021 and 2022. Again, if you read the text of Judge Romer's May 22nd order, he identifies a series of transactions where assets were shifted to and from each of the appellants in the days and weeks immediately after the January 11th, 2024 TRO. So do you agree that there is a clear asset freeze imposed by the order on these new entities? No, Judge. I didn't say that. I said that the judge found as fact that these entities had transferred assets between and among themselves in anticipation presumably of what was happening as a result of the January 11 TRO. So what's the relevance of that? That's abuse of the corporate form that would be relevant for alter ego? Correct. Is that right? Absolutely. So Mr. Loomis said, well, the magistrate judge does not use the term alter ego. That's right. He does not invoke the standard for alter ego liability and so on. And so if that were the ground of our decision, we should remand to do that analysis. Do you think we can look at what the magistrate did and say that is essentially an alter ego analysis? Well, no. I don't know that the court went through all the formalities that would be required in a detailed alter ego analysis. That issue, I think, comes in because an alternative argument for jurisdiction that the appellants have set forth is a request that this court issue mandamus jurisdiction. And one of the elements of a writ of mandamus is that the court has to deem that the writ is otherwise appropriate. And in this case, the facts, I mean, they don't meet any of the elements for mandamus. But with regard to that last element, these are entities who clearly engaged in activities that were intended to shield assets from the purview of the receiver. The district court's findings are in. Well, maybe. But that's the ultimate merits of the question. Right. So for the purpose of mandamus, the question is, was the magistrate entitled to enter a dispositive order against them even though they didn't consent to adjudication before a magistrate judge? And they could be totally guilty on the merits, but they still would have a right to go before an Article III judge, right? So that's the question that they wanted to talk about on mandamus. And in this case, I think the answer is under 636C, the magistrate became that judge, became that Article III judge. And the magistrate became the Article III judge because why? The consent of the original parties was enough? Yes, including parties that controlled the appellants in this case. Found as fact to be true. Okay. Can I ask this other question about the asset freeze? There's this dispute that just came up, but I don't know if I heard you take a position about whether, you know, the asset freeze applies to these defendants and whether that matters. First of all, I don't know what the receiver did. It's not in the record. But the only thing that's referenced in the record that would give me some sense as to some limits in terms of the asset freeze injunction being extended to these parties is because there was apparently an agreement while the appellants were contesting the finding of them being designated as receivership defendants that the receiver would take no action. Meaning what? Meaning what? What does that mean, take no action? Meaning that the receiver would take no action with regard to, I believe, freezing assets. So if I read that correctly, I think that this is an asset freeze injunction. Okay. And does that mean that it's an injunction and not simply an order appointing a receiver? No, the injunction issued in March of 2024, not in 2025. Well, if it's an injunction, you can take an interlocutor order from an order modifying an injunction, right? Right. But it didn't modify it. It didn't change. It didn't change to the category of affiliates and successors. It didn't change the order one iota. It didn't purport to. And that's the theory. Yes. Well, thank you very much. If the Court has any more questions, thank you for your time. This is yours. So a few points. First off, starting with the asset freeze point, I think Mr. D'Antonio agreed with me that the asset freeze injunction and the provisions that we object to that go beyond traditional receivership do apply to our clients, as he must. If you accept that the original receivership order was broad enough to cover us because it defined receivership defendants in such a way to include future entities that included successors of lit def and so forth, then that also means that we were subject to the original provisions in the injunction that defined the asset freeze defendants to include successors of lit def and so forth. As to then whether or not that's a modification or just the original injunction, again, Weight Watcher says that if you alter the legal relationships between parties, then that is enough to modify it. By contrast, if you are simply interpreting what you meant in the prior injunction, that is interpretation. This is clearly modifying because we were not subject to contempt sanctions before if we had failed to comply with the asset freeze. Well, but I mean, I think his position would be that you were, you just didn't know it because the receiver had yet hadn't identified all of the affiliates and successors. That is a — that is a — that sounds a lot like enjoining the world and under Alamite, respectfully. And I think that that is expressly — I mean, there is a defined category, and it is connected to the corporate defendants. Well, so respectfully, it's actually quite a bit of daisy-chaining analysis. And Mr. D'Antonio conflates the various appellants in his — in his argument on this point. Fidelis' claim to have — be connected to Mr. Blust, and then all the other appellants are claimed to be connected to Fidelis with very few connections to Mr. Blust. There's not really any showing here that Mr. Blust has any benefit from the other appellants. It's all this daisy-chaining going back and forth, which is part of the problem as well with his argument that we've already had our day in court with the prior appeal, and that's why we don't get another appeal challenging the receivership appointment order. Another problem with that is that, again, goes to the fundamental merits question for purposes of this — of this appeal as to whether the magistrate judge had jurisdiction to make these findings at all. I don't think this Court can find and hold that we already had the opportunity to raise all these arguments in the prior appeal based on factual findings of a magistrate judge who didn't have jurisdiction to make those findings whatsoever because none of the parties consented. And this isn't something that's come up on appeal yet, but it is certainly a — a true problem with their — with the ruling below. It is contrary to New York Chinese TV Enterprises. And in terms of whether or not the process is going to be sufficient in this instance to Judge Menache's question about a receiver going crazy, if Apple Computers and Microsoft were hailed into the Court by the receiver, Apple and Microsoft would be in the same position we were, forced to file a motion before a magistrate judge whose jurisdiction they did not consent to and then lacking the ability to seek relief from this Court. Now, they may say that we are closely connected, that this is different in scope. But again, I would remind this Court that most of the appellants have very tenuous connections at best to the original defendants and only get there by daisy-chaining. But it also doesn't matter for purposes of appellate jurisdiction. The reason why Congress created 1292a2 was out of a recognition that receiverships that can cause irreparable harm to businesses before final judgment enters, and that's why you need to have immediate interlocutory review. And it did so at a time before the widespread prevalence of magistrate judges handling a lot of these orders. Your view, just so that I am clear, is that every time the receivership identifies on any theory, including an alter ego theory, a new entity that might be subject to the receivership, you need a new receiver. Yeah, and to be clear... Is that correct? Yes. And can I explain why I do not think that is going to lead to out-of-control seriatim appeals, if you'll allow me? Sure. So to be clear, one, that is already the rule that happens much more frequently when you are dealing with receivers going after different entities that are said to possess assets that belong to the receivership. That is extremely common, because when you appoint a receivership over a defunct entity or a suspicious LLC, oftentimes there will be accusations that funds have been spirited back and forth. How do you go after those funds? You do it usually by bringing a fraudulent transfer action and asking for a temporary clawback or asset freeze and so forth. That is inductive. It is appealable. It has not created problems for this Court. This Court deals with that in turn. As to whether or not — and this is actually a narrower scope of cases, bringing in new entities, because it is actually much more... Is it a narrower scope of cases? I guess that's sort of an empirical question. Like, how often is it that we have a receivership order that says there is a receivership order over these entities and any affiliated or successor entities? So, look, I have not done a large-end statistical study, but I did look for receivership orders that have been issued by district judges who have been elevated to this Court, and I did not find pretty visions like that in many of those orders. They tended to be much more straightforward. And I'm not saying it doesn't happen. I'm not saying it's never happened. But what I'm also saying is that Mitchell has been on the books for nearly a century, affirmed by Wright and Miller, affirmed by Judge Posner and Hardigan v. Peters, that any time a new entity is brought in that lays a claim to property, they have a right to interlocutory appeal on the first instance to protect their due process rights, and it hasn't led to this problem. If I could just — one clarification. So in response to Judge Louie's question, you said that you think that whenever there's a new entity brought in, including under an alter ego theory, there would be an interlocutory appeal. Why the alter ego theory? So if, in fact, there is a determination that these are the original entities, why wouldn't that be sufficient to say that's just an application of the original receivership? So first off, I mean, one out of basic process — so for — because they would be contesting whether or not they are, in fact, the alter ego that's subject to that. But also as a — You're saying it hasn't been — it really is in dispute, so, like, you can't just say it's the alter ego. Yeah. Because otherwise they could simply say that Microsoft computers or Apple computers is — and, again, here we have the — Well, I mean, just in fairness, they can't simply say that, right? Like, so the receiver might say that, and there is review by the district court. No. Respectfully, there hasn't been a review by the district court. There's been a review by a magistrate judge who we did not consent to here, which is part of the basis for our concern with all — with what's been going on here. We would be — and I think in a — they would at least have a stronger position on this process concern. I don't think on the appellate jurisdiction, but at least for the process merits concerns here about what's going on if this, in fact, had been decided by the district judge, but it hasn't been. We've never been given the opportunity to have an Article III judge. And before this Court — I mean, just because it's a quirk that we have the magistrate judge here. So let's say there were a review by the district court. And would that be an appropriate way for the statute to work? So, no, I don't think so, because still you would need the 1292A2 point. My only point is that in terms of the process points — and I promise I'm wrapping up with just the sentence. No, no. I hear you. You win, you win, you win, no matter what. But go ahead. I'd like to think so. But the — even if we get to the — to the — at least in the context of the magistrate — all I — my only point with the magistrate judge point is that if you don't adopt the rule and reading of the statute this way, it does create a serious risk in this case, but also in future cases where you have magistrate judges supervising receiverships and not exercising control. It — Well, I didn't mean to discount it. I understand the concern. Yeah. And it is an Article III right. And to the questions earlier about whether or not we had the right to challenge this, whether people should have challenged it for us, our right to an Article III tribunal, our right to a 1292A2 appeal is personal to us. It's not personal to Mr. Blust. It's not personal to the original defendants. We had that right. Congress gave it to us. And we are asking support to exercise it. She has the argument. Thank you very much, Your Honor. Thank you. We'll reserve decision.